SBK:SJM

M-08-738

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

ROMAN MAVASHEV

               Defendant.

- - - - - - - - - - - - - - - - - - X

COMPLAINT AND
AFFIDAVIT IN SUPPORT
OF ARREST WARRANT

(T. 18, U.S.C.,
§ 1349)

EASTERN DISTRICT OF NEW YORK, SS:

    JOSEPH MORIARTY, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), duly appointed according to law and acting as such.

    On or about November 29, 2005, within the Eastern District of New York and elsewhere, the defendant ROMAN MAVASHEV, did knowingly and intentionally conspire to execute a scheme and artifice to defraud one or more financial institutions, to wit: Long Beach Mortgage Company ("Long Beach"), Fremont Investment and Loan ("Fremont"), and Aurora Loan Services ("Aurora"), and to obtain money owned by and under the custody and control of Long Beach, Fremont, and Aurora by means of materially false and fraudulent pretenses, representations and promises, in violation of Title 18, United States Code, Section 1344.

    (Title 18, United States Code, Section 1349)

The source of my information and grounds for my beliefs are as follows:

1. I have been a Special Agent with the FBI for approximately six years, and I am currently assigned to a financial institutions fraud squad, which investigates violations of federal criminal laws affecting financial institutions and other financial crimes, including mortgage fraud. In this assignment, I have conducted physical surveillance, interviewed witnesses, reviewed extensive documents obtained through the service of subpoenas, and used other investigative techniques to secure relevant information for use in criminal prosecutions.

2. My knowledge of the information set forth in this affidavit is based upon my personal participation in this investigation and in numerous other investigations of fraud perpetrated against financial institutions, including mortgage fraud, my review of records and reports, my review of recorded conversations between cooperating witnesses and the subjects of the investigation, my discussions with witnesses and victims, my conversations with other law enforcement agents involved in this investigation and similar investigations, my conversations with and review of information provided by financial institutions and my law enforcement experience and training.

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause to support the

issuance of an arrest warrant, it does not include all of the facts I have learned during the course of this investigation. Where actions, conversations and statements of others are reported in this affidavit, they are reported in substance and in part unless otherwise indicated.

I.  BACKGROUND

4. Long Beach, Fremont, and Aurora are financial institutions or wholly owned subsidiaries of financial institutions, the deposits of which are insured by the Federal Deposit Insurance Corporation.

5. The defendant ROMAN MAVASHEV, together with others, owned and operated a licensed mortgage brokerage called New Generation Funding. As a licensed mortgage brokerage, New Generation Funding's role was to gather information from prospective borrowers, including their income, assets, liabilities and credit worthiness, and then present this information to various mortgage lenders in an effort to induce them to lend money to the borrower for use in purchasing real property. If a mortgage lender agreed to lend money to a borrower, New Generation Funding coordinated all aspects of the deal and conducted a closing to finalize the transaction. MAVASHEV, as a licensed attorney, served as the settlement agent, representing the mortgage lenders, at many of the closings of loans brokered by New Generation Funding.

6. An investigation of New Generation Funding was initiated when two mortgage lenders, Fremont and Long Beach, stopped doing business with New Generation Funding in late 2005 because of an unusually high rate of defaults on loans brokered by New Generation Funding. The mortgage lenders' audits of the mortgage loan applications submitted by New Generation Funding revealed a pattern of fraud and led the lenders to contact law enforcement.

7. This investigation revealed numerous false statements in loan applications submitted by New Generation Funding. These false statements in the loan applications included, among other things, false employment information, grossly inflated income, fraudulent identity documents, failure to disclose other liabilities and grossly inflated assets. In most cases, such fraudulent information was used by a single buyer to purchase multiple properties, with each property's loan being funded by a different mortgage lender who was not informed about the other nearly-simultaneously acquired loans. MAVASHEV was interviewed regarding New Generation Funding's high default rate and the prevalence of fraud in their loan files. MAVASHEV claimed no knowledge of the fraudulent information presented to the lenders in connection with the aforementioned loans.

## II. THE FRAUDULENT TRANSACTIONS

8. A cooperating witness ("CW1") whose information has proven reliable, was interviewed regarding his involvement and knowledge of the fraudulent scheme described above. CW1[1] provided information regarding the following transactions:

9. In August 2006, CW1 disclosed that three closings were held nearly simultaneously at New Generation Funding in late 2005 for three properties purchased in the name Rovi Chowdhaury. CW1 provided me with the addresses for the three properties, which were 34-42 62nd Street in Woodside, Queens, 93-12 176th Street in Jamaica, Queens and 102-06 189th Street in Hollis, Queens. My search of New York City's real property record database, Acris.com, which contains the sale and mortgage loan history for each of these properties, revealed that each of these properties was in fact purchased in the name Rovi Chowdhaury using mortgage loans funded by Aurora, Fremont and Long Beach, and that each of these loans was defaulted on shortly after the properties were purchased.

10. A review of the loan files obtained from the three lenders revealed that the sales of the properties located at 34-42 62nd Street in Woodside, Queens, and 93-12 176th Street, Jamaica, Queens, both closed on November 29, 2005, and that the

---

[1] CW1 pled guilty to participating in the fraud described herein and is cooperating with law enforcement with the hope of receiving a lesser sentence.

sale of the property located at 102-06 189th Street, Hollis, Queens, closed on November 30, 2005. The mortgage loan applications for each of the three properties reflect that Rovi Chowdhaury claimed that each of the properties was being purchased for use as his primary residence, causing the mortgage lenders to assign a lower risk to these loans and making it possible for the borrower to obtain 100% financing. In addition, the loan applications for the purchase of the second and third properties failed to disclose the mortgage loan for the purchase of the first property as a liability. Thus, the mortgage lender for the second property was unaware of the borrower's liability on the loan used to acquire the first property and the mortgage lender for the third property was unaware of the borrower's liabilities on the loans used to acquire the first and the second properties.

11. The loan files for all three loans list ROMAN MAVASHEV as the settlement agent. According to CW1, ROMAN MAVASHEV was in fact present for all three closings. As the settlement agent for each transaction, MAVASHEV represented each mortgage lender. Because the closings happened nearly simultaneously and MAVASHEV attended each of the closings, MAVASHEV was aware of the borrower's undisclosed liabilities on the mortgage loan applications by which the second and third properties were acquired with 100% financed loans. MAVASHEV

6

failed to disclose the borrower's liability on the first property to the lenders for the second and third loans. Because all three transactions occurred within a day of each other, the loans had not yet appeared on the borrower's credit report.

12. The total value of the three aforementioned loans was approximately $1,850,000.00.

WHEREFORE, I respectfully request that an arrest warrant be issued so that the defendant ROMAN MAVASHEV can be dealt with according to law.

_____
Joseph Moriarty
Special Agent
Federal Bureau of Investigation

Sworn to before me this
11th day of August, 2008

_____
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

7